## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 7 |
| JEFFREY T. WEEKS | |
| ANGELA J. WEEKS | |
| | Case No. 11-31518 |
|        Debtor(s). | |
| | |
| MIKE VALLINO | |
| MICHELE C. VALLINO | |
| | |
|        Plaintiff(s), | |
| | Adv. No. 11-3348 |
|    v. | |
| | |
| JEFFREY T. WEEKS | |
| ANGELA J. WEEKS | |
| | |
|        Defendant(s). | |

### OPINION

In this case, the Court must address whether damages awarded in conjunction with a state court trespass proceeding are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### FACTS

The parties live adjacent to each other[1] in the Keebler Oaks subdivision in Maryville, Illinois.  In May 2007, the defendants, Jeffrey and Angela Weeks,  began construction of an in-ground swimming pool.  In addition to excavation, the project included the construction of a retaining wall to house the pool filtration system, a fence, and landscaping.  It is undisputed that

---

[1]In an earlier draft of this Opinion, the Court had originally referred to the parties as "neighbors." However, the Court realized that the use of the word "neighbors" was inappropriate in this situation. The parties are not neighbors living in a neighborhood.  Rather, the parties live in a subdivision and will be forever divided by a line on a piece of ground.  Each night when they pull into their driveways after work or when they see each other across the fence, they will be reminded of their quarrels and live unhappily ever after. . . . Such a shame.  Imagine the lessons on common decency, forgiveness, and friendship they are not teaching their families.

Mr. Weeks did not have a survey done before beginning the pool project but, rather, relied on his recollection of where the property markers were.  Stipulated Exhibit 10, pp. 112-13.   At the time that the work was performed, Mr. Weeks believed that the fence, retaining wall, and other improvements were on his property.  Stipulated Exhibit 10, pp. 115-16.

In December 2007, the plaintiffs commissioned a survey of their property.  Stipulated Exhibit 6.  The survey revealed that the defendants' fence and landscaping encroached on the plaintiffs' property by approximately 18 inches.  In addition, excavated soil from the defendants' pool was placed in the plaintiffs' yard.   While there was conflicting testimony as to whether the plaintiffs advised the defendants of the encroachment, it is undisputed that on May 9, 2008, the plaintiffs filed suit against the defendants in the Madison County Circuit Court seeking, *inter alia*, ejectment and damages for trespass. Stipulated Exhibit15.[2]   The state court complaint also requested a temporary restraining order and a preliminary injunction.  *Id.*

Upon being served with the state court summons and complaint, the defendants retained the services of an attorney, who advised them that they should remove the encroachments if they could do so without entering the plaintiffs' property.   Defendant Jeffrey Weeks testified that he removed the fence, retaining wall, and some of the offending landscaping in the summer of 2008. In addition, a downspout and certain pipes were also either removed or rerouted in order to avoid interfering with the plaintiffs' property. *See* Stipulated Exhibit 11, p. 2, ¶ 4.

A non-jury trial was conducted on the state court complaint on June 8, 2010.  On September 2, 2010, the Circuit Court of Madison County entered judgment in favor of the plaintiffs and against the defendants on the complaint.  The court found that the defendants had

---

[2]Although Mike Vallino testified that his counsel had sent a letter advising of the encroachment prior to filing suit, no such letter was produced.  Jeffrey Weeks testified he did not receive a letter in advance of the complaint.

taken possession of certain portions of the plaintiffs' property and wrongfully withheld

possession from the plaintiffs.  Stipulated Exhibit 11, p. 1.  However, while the court held that

the defendants had willfully trespassed on the plaintiffs' property after receiving notice of the

survey in the spring of 2009,[3]  it specifically found that "prior to receiving a copy of the survey

and observing the survey pins, Defendants mistakenly believed that their activities took place on

their side of the lot line."  *Id* at p. 4, ¶ 6.  In addition to granting possession of the property to the

plaintiffs, the court awarded damages to the plaintiffs in the amount of $28,215.04.  It also

enjoined the defendants from entering or in any way altering the plaintiffs' property. *Id*. at pp. 5-

7.  It is undisputed that at the time that the bankruptcy was filed, excavated soil remained on the

plaintiffs' property.

The defendants filed a Chapter 7 petition on July 6, 2011.   The plaintiffs brought this

action to have their debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as a willful

and malicious injury.  A trial was conducted on the amended complaint on May 22, 2012.  At the

conclusion of their case, the plaintiffs' moved for a directed verdict, alleging that under

principles of collateral estoppel, the state court judgment was nondischargeable.  The Court

construes the plaintiffs' motion as a motion for judgment after the plaintiffs' case.[4]  The Court

took the plaintiffs' motion, as well as the complaint, under advisement.

<u>ISSUE</u>

The issue in this case is whether damages awarded due to the defendants' failure to

remove excavated soil from the plaintiffs' property after learning of an encroachment are non-

---

[3]The state court judgment indicates that the defendants learned of the survey and attendant
encroachments in 2009.  Both parties indicated to this Court that this appears to be a typographical error
and that the defendants learned of the property survey in *2008*.

[4]A directed verdict applies only in the context of a jury trial.

dischargeable as a willful and malicious injury pursuant to 11 U.S.C. § 523(a)(6).[5]

DISCUSSION

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).   In order to fall within the purview of this section, the injury must be both willful *and* malicious.  As the Supreme Court explained  in *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974 (1998):

> The word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.  Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described 'willful acts that cause injury.'  Or, Congress might have selected an additional word or words, *i.e.* 'reckless' or 'negligent' to modify 'injury.'  Moreover . . ., the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts.  Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply the 'act itself.'

*Id*. at 63, 118 S.Ct. at 977 (internal citations omitted).  Put quite simply, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  *Id*., 118 S.Ct. at 978.

Relying on the *Geiger* Court's discussion of intentional torts, the plaintiffs assert that their debt– a state court damages award for trespass– is nondischargeable.  Essentially, plaintiffs argue that because the state court judgment is based on an intentional tort, it is necessarily nondischargeable and that the defendants are barred by collateral estoppel from relitigating whether the debt is the result of a "willful and malicious injury."   This Court disagrees.  As the

---

[5]As will be discussed in greater detail *infra*, the state court previously determined that certain encroachments by the defendants, such as the fence, retaining wall, and landscaping were made while the defendants mistakenly believed that they were operating on their own property. Hence, based on principles of collateral estoppel, the Court limits the issue to the effect of the defendants' failure to remove excavated soil from the plaintiffs' property.

-4-

Seventh Circuit recently explained in *Jendusa-Nicolai v. Larsen*, 677 B.R. 320, 322 (7th Cir.

2012), not all intentional torts fall within the ambit of § 523(a)(6).  "An injury is willful within

the meaning of section 523(a)(6) only if intended; if it's the result but not the *intended* result of

an intentional act, the debt arising from the injury is dischargeable."  *Id.*  The commission of an

intentional act by the defendant is insufficient to declare a debt non-dischargeable under this

section; the plaintiff must also show that the defendant intended the resulting injury.

Certainly, collateral estoppel principles are applicable to nondischargeability proceedings

under § 523 of the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654

(1991).  Collateral estoppel, also known as issue preclusion, "precludes a second trial of an issue

that was necessarily determined in the prior action between the same parties even if the claim

that is asserted in the second action is different than that asserted in the first." *Jorge v. Mannie*,

258 B.R. 440 (Bankr. N.D. Cal. 2001).  As the Seventh Circuit has noted,

> [c]ollateral estoppel is a judge-made doctrine that serves the 'dual purpose of
> protecting litigants from the burden of relitigating an identical issue with the same
> party or his privy and of promoting judicial economy by preventing needless
> litigation.'  For collateral estoppel to apply, four elements must be met: '(1) the
> issue sought to be precluded must be the same as that involved in the prior
> litigation, (2) the issue must have been actually litigated, (3) the determination of
> the issue must have been essential to the final judgment, and (4) the party against
> whom estoppel is invoked must be fully represented in the prior action.'

*Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994) (internal citations omitted).

A review of the state court judgment in this case indicates that the court found that the

defendants committed  trespass against the plaintiffs by placing "a fence, retaining wall, drain

pipes, patio brick, and landscaping rock upon plaintiffs' property west of the lot line. . . ."

Stipulated Exhibit 11 at p. 3, ¶ 1.  The court further found that the defendants continued to

trespass against the plaintiffs "by encroaching upon plaintiffs' property . . . with [d]efendants'

excavated soil." *Id*. at ¶ 2.  Although the Court made a specific finding that the defendants'

trespass was "willful," *Id.* at ¶ 6, *there was no corresponding finding that the defendants acted*

*with the intent to injure the plaintiffs*.  To the contrary, the state court's *only* specific finding of

scienter was that until the defendants received a copy of the plaintiffs' survey and observed the

property markers, they *"mistakenly believed that their activities took place on their side of the*

*lot line*." *Id*. (emphasis added).   This finding is determinative under principles of collateral

estoppel as to the issue of the defendants' intent– at least with regard to encroachments that

occurred prior to the spring of 2008.  As the state court made no findings regarding whether the

defendants intended to injure the plaintiffs by failing to remove the excavated dirt from their

property, this Court finds that the issue has not been litigated and, therefore, collateral estoppel

does not apply.

      In so concluding, the court distinguishes this case from those cited by the plaintiffs.  For

instance, plaintiffs rely on *In re Harper*, 378 B.R. 836 (Bankr. E.D. Ark. 2005) and *In re Pion*,

2007 WL 3088137 (Bankr. D. Vt.),  in which bankruptcy courts held that damages arising from

state court trespass actions were nondischargeable pursuant to 11 U.S.C. § 523(a)(6).  Although

factually similar to the case at bar in the sense that each of the cases involved trespass to

property, they are distinguishable in that both the *Harper* and *Pios* courts made specific findings

that the defendants either acted with malice or with no just cause or excuse.   Indeed, in *Pios*, the

court specifically found that the defendants' actions in cutting down two of the plaintiffs' trees,

partially removing a stone wall, and removing iron pins marking the property line were both

willful and malicious for purposes of § 523(a)(6), and, therefore, the state court judgment as to

those offenses was nondischargeable.  However, the bankruptcy court discharged certain

compensatory damages for flooding that was caused by the defendants' filling of a streambed.

The court explained:

> While this Court has held that the Pions' various forms of trespass, including
> filling in the stream-bed, constituted  willful and intentional injuries to the
> [plaintiffs'] property, this Court has been unable to find any reference in the state
> court decision that would show that the Pions intended to cause the destruction of
> the [plaintiffs'] property by flooding when they filled in the streambed and
> installed the culvert.  In other words, the Court finds no evidence in the record
> that the Pions *intended the consequences of the act* of filling in the streambed and
> installing the culvert, namely the destruction of the property by flooding.  The
> record merely establishes that the Pions *intended to commit the acts* that
> ultimately led to injury.  This is a crucial distinction.  *See Kawaauhau,* 523 U.S.
> at 61-62.  Accordingly, because it was not willful, as understood under §
> 523(a)(6), it does not satisfy the statute's requirements for dischargeability . . . .

*Pios*, 2007 WL 3088137 at *12.

Because the state court record in the instant case is devoid of any evidence that the

defendants intended the consequences of their willful actions, the Court must look to the

evidence presented at trial to determine whether the defendants acted with the requisite scienter

to hold the debt nondischargeable under 11 U.S.C. § 523(a)(6).

 Defendant Jeffrey Weeks acknowledged in his testimony that he did not have a survey

performed prior to beginning his pool and landscaping project, but, instead,  relied on his

recollection of where the property boundaries were.  He testified that he specifically instructed

his contractor *not* to go onto the plaintiffs' ground.  Unfortunately, however, Mr. Weeks was

mistaken as to where the property line fell.  Given the animosity between the parties, the Court

finds Jeffrey Weeks' testimony to be credible.  He certainly did not want to create a problem

with someone with whom he did not have a good relationship.

Upon seeing the boundary markers after plaintiffs' survey, Mr. Weeks realized that his

improvements and excavated soil encroached on the plaintiffs' property.  He  testified that he

was not sure what course of action he should take at that point, given the parties' acrimonious relationship. Consequently, he decided that he would wait for the plaintiffs to contact him as to how they wished to proceed.  The plaintiffs did contact him in May 2008– in the form of a lawsuit which included a request for a temporary restraining order.  Although the temporary restraining order was ultimately not granted, Mr. Weeks believed that he was prohibited from entering plaintiffs' property. Upon advice of counsel, the defendants removed as many of the offending encroachments as they could from their side of the property line prior to trial. However, the excavated soil remained on the plaintiffs' property.

The state court judgment entered in September 2010 not only awarded damages to the plaintiffs, but also imposed a permanent injunction and restraining order prohibiting the defendants from entering the plaintiffs' property.   Mr. Weeks testified that prior to filing bankruptcy, he approached plaintiff Mike Vallino and offered to return the plaintiffs' property to its original condition.  This offer, however, was not well received.  Instead, the plaintiffs have chosen to pursue enforcement of their judgment though this adversary action.

Based on the testimony, the Court does not believe that the plaintiffs have met their burden of proof and shown by a preponderance of the evidence that the defendants *intended* to cause the injury to the plaintiffs' property.  Although Mr. Vallino testified that he believes that the defendants' failure to remediate the property is due to animosity between the parties, the defendant offered plausible explanations for why he has not yet removed the encroaching soil or paid the state court judgment. The defendants did not believe that they were permitted to enter the plaintiffs' property because of the request for a restraining order and injunction.  After entry of the judgment, the defendants were specifically enjoined from entering the property.  Further,

because of the loss of Mr. Weeks' employment, the defendants are unable to pay the judgment.[6]

There is certainly no question that the defendants were, at the very least, negligent in failing to survey their property prior to commencing their construction project. Why the defendants would embark on an expensive home improvement without verifying the yard boundaries is beyond reason. This entire situation could have been avoided had the defendants simply verified the property lines. However, *Geiger* makes clear that mere negligence, or even recklessness, is insufficient to sustain a cause of action under § 523(a)(6). Absent a showing that the defendant intended both the action *and the injury*, the debt must be discharged.

The state court specifically found that there was no intent to trespass on the plaintiffs' property as to the defendants' fence, retaining wall, drain pipes, patio bricks, and landscaping. Instead, the defendants' actions were based on their "mistaken belief" that they were operating on their own property. Hence, collateral estoppel applies. Further, this Court finds that he "ongoing" encroachment– *i.e.* the defendants' failure to remove the excavated dirt from the plaintiffs' property– was a product of the original, unintentional act. Debtor Jeffrey Weeks offered plausible reasons as to why he did not remove the dirt after he was apprised of the encroachment, including the fact that he was ultimately *prohibited* from doing so by the state court judgment. The Court finds the plaintiffs have failed to meet their burden of proof in that they have not shown that the defendants *intended* to injure them by failing to remove the excavated dirt.

Accordingly, for the reasons set forth above, the plaintiffs' motion for judgment after the plaintiffs' case is denied. Judgment is granted in favor of the defendants and against the

---

[6]Mr. Weeks testified that he is currently unemployed and is receiving unemployment benefits.

plaintiffs on the complaint.


ENTERED: August 17, 2012

_____/s/ Laura K Grandy_____
UNITED STATES BANKRUPTCY JUDGE